UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JODY SIMPSON, Mother & Next Friend of J.S., a Minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 17-cv-1340-JES-JEH |
| TRI-VALLEY COMMUNITY UNIT SCHOOL DISTRICT NO. 3; an Illinois Local Governmental Entity, DAVID MOUSER, Superintendent, in his Individual Capacity, and BEN DERGES, Principal of Tri Valley High School, in his Individual Capacity, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Plaintiff Jody Simpson's Motion for Reconsideration. D. 50[1]. Defendants Tri-Valley Community Unit School District No. 3[2], David Mouser, and Ben Derges filed a collective Response in Opposition. D. 51. For the reasons set forth below, Plaintiff's Motion is DENIED.

### BACKGROUND

Plaintiff[3] filed a Complaint, since amended, in July 2018 against Defendants, seeking damages pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment rights of her child, J.S., a minor. D. 1. Specifically, Plaintiff alleged that Ben Derges ("Derges"), the principal of Tri-Valley High School, conducted an unlawful search of J.S.'s cellphone and that

---

[1] Citations to the Docket in this case are abbreviated as "D. __"
[2] Any claims against Defendant Tri-Valley Community Unit School District No. 3 were dismissed by the Court's Order on July 9, 2018; however, this Defendant was joined as a necessary party in the Amended Complaint pursuant to 745 ILCS 10/9-102.
[3] For the purposes of this opinion, the Court refers to Plaintiff as Jody Simpson.

Derges had a custom of seizing and searching student cellphones unlawfully. Plaintiff further alleged David Mouser ("Mouser"), the school district's superintendent, had knowledge of Derges' alleged unlawful conduct and acquiesced in that custom. *Id.*

On July 6, 2020, this Court entered an Order denying Plaintiff's Motion for Summary Judgment and granting Defendants' Motion for Summary Judgment. D. 48. The Court concluded that Derges' search of J.S.'s cellphone complied with constitutional standards and that Defendant David Mouser had no knowledge of any purported custom of unconstitutional searches. The Court also concluded that Defendants Derges and Mouser were entitled to qualified immunity because Plaintiff did not show how J.S. was deprived of a constitutional right when his phone was searched, and even if his rights were violated by the search, Plaintiff had not established that the constitutional right was clearly established at the time of the search. Plaintiff now moves for the Court to reconsider its Order, declaring the Court "misapprehended critical disputed facts as undisputed facts in making its determination." D. 50, at 1.

## LEGAL STANDARD

A motion to reconsider is appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented by the parties, "where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011). A motion to reconsider is not to be used "at the disposal of parties who want to 'rehash' old arguments." *Wagner v. Nutrasweet Co.*, 873 F.Supp. 87, 101-02 (N.D.Ill. 1994).

## DISCUSSION

Plaintiff asks the Court to reconsider its Order on the cross-motions for summary

2

judgment because the Court "misapprehended critical disputed facts." D. 50, at 1. Defendants contend that Plaintiff has not raised any new issues or identified any misapprehensions of the record to justify reconsideration. D. 51, at 2. Defendants also contend that even if the Court finds it misapprehended certain facts, the analysis of Defendants' liability would not change, under either the direct standard for Section 1983 liability or under a qualified immunity analysis. *Id.*

Plaintiff's first argument for reconsideration is that the Court mistakenly relied on a disputed fact that Derges had knowledge that J.S. had previously bullied W.J. prior to the search of J.S.'s phone. D. 50, at 2. Plaintiff argues that the source of that information is a written document prepared by S.D. in anticipation of his deposition. *Id.* Plaintiff also contends that Derges did not testify during his deposition that S.D. expressed concerns about J.S. bullying W.J. during the morning interview with S.D. *Id.* Plaintiff then briefly attacks S.D.'s statements to Derges because of S.D.'s "close personal relationship" with another material witness and because S.D.'s younger brother was a sophomore at the school at the time S.D. was deposed. *Id.* However, the attack on S.D. is not premised on any disputed fact and Plaintiff does not argue that the Court misapprehended any fact related to the credibility of S.D.

As stated in the previous Order, a search is justified at its inception when there are reasonable grounds to suspect the search will uncover evidence the student has violated the law or the rules of the school. D. 48, at 9 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985)). To justify his initial search in this case, Derges needed to have a reasonable suspicion he would find evidence on J.S.'s cellphone of the Gun Meme or other evidence that J.S. had violated the school rules, which includes bullying. *Id.* The undisputed facts support Derges' reasonable suspicion he would uncover evidence that J.S. had violated the school rules, which justifies the search at its inception.

It is undisputed that S.D. told Derges the following information during his first interview, which preceded the search of J.S.'s phone: A group of freshman boys, including J.S., were in the "commons" area of the high school on the morning of the search and they were laughing at a photograph W.J. had posted of himself on Snapchat. D. 33, at 8. J.S. asked S.D. to take a screenshot of the picture and send it to him. *Id.* S.D. complied with J.S.'s request. *Id.* This uncontradicted evidence alone provides the constitutional basis to justify the search at its inception.

Plaintiff's arguments in her motion to reconsider ignore the testimony from the deposition of S.D. taken under oath. S.D. additionally testified in his deposition that when he had his first meeting with Derges that morning, "[Derges] said somebody was being bullied." D. 34-7, at 43:13-16. During the deposition, S.D. was specifically asked whether he said anything in that first meeting about J.S. bullying W.J. in any context outside of the picture. *Id.* at 43:17-19. S.D. said he informed Derges that J.S. "was one of the people who was making fun of other people on Instagram and Snapchat and that he would make fun of [W.J.] on those." *Id.* at 43:17-44:1. Plaintiff presents no evidence contradicting S.D.'s testimony.

Most notably, Plaintiff had the opportunity in her Response to Defendants' Motion for Summary Judgment to dispute what information S.D. reported to Derges that morning but did not do so. *Compare* Defendant's Motion, D. 34, at 9, ¶ 27 ("SD further explained to Principal Derges that JS had a history of making memes making fun of specific people, including WJ, and that JS made memes during school hours. … SD also knew JS to bully WJ, including making fun of the way WJ talks. … Based on JS's history of making memes and his request for the picture, SD told Principal Derges that JS intended to use the picture of WJ to create a meme."), *with* Plaintiff's Response to ¶ 27, D. 39, at 7 ("Plaintiff does not dispute that S.D. alleges to have

4

reported the identified information to Derges but disputes the balance of the allegations set forth therein."). Plaintiff did not dispute that S.D. reported the information, rather, Plaintiff disputed the accuracy of the allegations from S.D. Ultimately, Plaintiff categorized Defendant's ¶ 27 as containing "immaterial facts." The accuracy of S.D. statements regarding J.S. bullying W.J. are ultimately immaterial because the reasonableness of the search rested upon Derges' knowledge at the time. Plaintiff did not dispute that S.D. reported information to Derges about J.S., which prompted Derges to search the phone of J.S.

Even if there was a genuine issue of fact as to whether Derges had prior knowledge of J.S. allegedly bullying W.J. before the search, it would not change the Court's finding. Derges had already began his investigation that morning looking for evidence of the reported Gun Meme. The undisputed facts show Derges had received information, which led him to believe that J.S. had been involved in the creation of that meme. Thus, Derges had a reasonable suspicion that justified the search of J.S.'s cellphone at its inception, even without knowledge that J.S. previously bullied W.J.

Plaintiff's second argument for reconsideration involves the Court's determination of the relevant scope of the search. D. 50, at 2. In Plaintiff's Motion for Summary Judgment, she argued Derges committed a "digital strip search" because he searched the camera roll, rather than restricting the scope to the Snapchat application. D. 33, at 19. Now, Plaintiff presents a new argument concerning the scope of the search by claiming the Court misapprehended the record regarding "the areas of the phone [Derges] searched." D. 50, at 2. In particular, Plaintiff points to the deposition of J.S., in which J.S. testified he observed Derges searching different applications in the phone, including "his emails, pictures of his family vacation, pictures of his pet, everything Derges could get into on J.S.'s phone." *Id.* at 3.

Plaintiff did not cite to this portion of J.S.'s deposition in her Motion for Summary Judgment. *See* D. 33, at 9-10 (describing Derges' interview of J.S. and search of J.S.'s phone). Instead, Plaintiff submitted as an undisputed fact that Derges searched the camera roll, without any mention of J.S.'s testimony that the search went beyond the camera roll. *Id.* at ¶ 46 ("Derges searched J.S.'s unlocked camera roll shortly after J.S. entered his office while making handwritten notes on a yellow legal pad."). In support of this fact, Plaintiff cited to several portions of Derges' deposition and one portion of J.S.'s testimony. *Id.* The cited portions of Derges' deposition repeat the assertion that he only searched the camera roll. *Id.* (citing D. 33-4 (Exhibit C), at 96:7-96:15; 98:3-98:6; 105:16-105:19; 107:9-107:14; 107:25-108:9; 109:12-109:16; 110:22-111:4; 120:21- 120:23). Plaintiff also cited 7 lines in the deposition transcript of J.S., in which there was the following exchange:

> Q: And what do you specifically recall him looking through?
>
> A: Just looking at the photo gallery. Just essentially it seemed like he was going through everything he could to gather information. He had a yellow notepad that he was taking notes on while searching for this information.

*Id.* (citing D. 33-10 (Exhibit I), at 12:17-12:23).

In the undisputed material facts with her Motion for Summary Judgment, Plaintiff chose not to include J.S.'s testimony that the search went beyond the camera roll. *See* D. 33, at 9-10 (describing Derges' interview of J.S. and the search of J.S.'s cellphone). In her argument concerning the scope of the search, Plaintiff focused only on Derges' admission that he searched the camera roll. D. 33, at 18-20. Plaintiff now seeks a second bite at the apple to argue what was not included in her Motion for Summary Judgment: that the search exceeded a reasonable scope when it went beyond the camera roll. It is long established that "[a]rguments that could have been made earlier but are instead raised for the first time in a Rule 59 motion are

waived." *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991 (7th Cir. 2008). Even if *arguendo* the Court found Plaintiff had not waived this argument, the search would still be within a reasonable scope and Defendants would still be entitled to qualified immunity.

A search is permissible in scope "when the measures adopted are reasonably related to the objective of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342. Plaintiff now cites to a portion of J.S.'s deposition, in which J.S. describes which applications Derges accessed. D. 50, at 3. J.S. testified that Derges viewed pictures in his camera roll, including "vacation photos, pictures of my dog, and family pictures, the memes, everything." D. 34-2, at 13:3-13:7. When asked what other applications Derges accessed, J.S. responded, "[a]t least Snapchat and Instagram, and I believe gmail as well" and "[Derges] stopped going through the photo gallery after some time and began to go through other things." *Id.* at 13:8-13:24. Plaintiff has not established how searching these areas of J.S.'s phone were excessively intrusive in light of the circumstances or not reasonably related to the objective of the search.

The Court provided examples in its prior Order of how a search might cross the line "into the realm of excessively intrusive," such as searching "J.S.'s emails, calls, messages, or web browser." D. 48, at 11. These were simply examples and not meant to convey a finding that the search would have exceeded the reasonable scope if there was any evidence that Derges had searched any of those areas. The portion of J.S.'s testimony that Plaintiff cites now still does not make the search excessive. Degres was looking for information related to the meme created about W.J. It is reasonable for Derges to have searched areas of the phone where J.S. could have received or exchanged images with other students such as emails or text messages.

Finally, Plaintiff asserts that the prior Order must be reconsidered because "genuine issues of fact exist as to whether or not qualified immunity applies herein." D. 50, at 3. Regardless of when Derges learned that J.S. was bullying W.J., or whether Derges searched emails, the entire camera roll, and social media applications, Plaintiff has not met her burden of showing a clearly established right existed and was violated by the search. As stated in the prior Order, "[t]o defeat the defense of qualified immunity, Plaintiff must either identify a closely analogous case or persuade the Court that the conduct was so egregious that no reasonable school official would have thought he was acting lawfully . . . Plaintiff has done neither." D. 48, at 14.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion (D. 50) for Reconsideration is DENIED.


Signed this 24th day of September, 2020.


                                             s/ James E. Shadid
                                             JAMES E. SHADID
                                             United States District Judge